# COMMON PLEAS OF LUZERNE COUNTY.

## BISHOP O'HARA vs GRENAWALT.

1. Bishop O'Hara is the owner in trust of certain property situate in the Borough of Hazleton. The local authorities assessed and levied County, School, Poor and Borough Tax thereon, Whereupon the Bishop prayed for an injunction. His prayer was heard, and the injunction went out. On motion to continue the same, held, that the property in question is within the meaning of Art. IX, § I of the constitution, and of the Act of 1874, exempting from taxation places of stated worship, and all institutions of charity with the grounds thereto annexed.

2. It is the use, and not the building, which defines exemption.

3. Donough's Appeal, 5 Norris, 306; Craig et al vs. Church, 9 Pittsb. Leg. Jour., 90; and Mullin vs. Erie Co., 3 Norris, 291, followed.

The plaintiff in this case, Rt. Rev. Wm. O'Hara, Bishop of Scranton, was, at the commencement of this suit, the owner in trust, for the Catholic Congregation of Hazleton, Pa., of several lots of land in said borough. Upon one of said lots is erected a large frame dwelling house, known as St. Gabriel's Hall, and upon the other is also a frame building. The said lots were purchased, and the said buildings erected by the plaintiff, with funds contributed by the Catholics of Hazleton, for the purpose. This school is in charge of the Sisters of Mercy, who give their services gratis, and is free to all alike. The second named building is used by the said Sisters of Mercy as a place of residence, as a school-room, and place of religious worship, and is a necessary part and parcel of the first named building. These institutions were founded, endowed, and are still maintained by charity. An effort having been made by the authorities of Luzerne county, the Borough of Hazleton, and the school and poor districts of Hazleton to collect taxes from the said property, the plaintiff, through his solicitors, Messrs. D. W. & J. F. Connolly, of Scranton, presented to Judge Handley, a Bill in Equity, setting forth the facts, and praying that an injunction might issue, to restrain the defendant, Grenawalt, who, as collector, held the duplicates for the collection of said taxes. A preliminary injunction was awarded as prayed for, and the case was soon after argued on a motion to dissolve.

Connollys, for plaintiff.

The property mentioned in this bill is clearly exempt from taxation under Art. IX, Sec. 1, of the Constitution, and the Act of May 14th, 1874.

Donough's Appeal,    Norris 306.
Mullin vs. The Commissioners, 3 Norris, 291.

H. W. Palmer, contra.

Opinion by HANDLEY, J.

The plaintiff in this case complains, and says that he is the Roman Catholic Bishop of Scranton, and the owner of certain real estate situate in the Borough of Hazleton, in Luzerne county; that said property is held in trust for the Catholic Congregation of St. Gabriel, of Hazleton; that the building aforesaid is an institution of learning, erected, and, up to the present time maintained by private chairity; that said building is also a regular place of stated worship, according to the requirements of the Roman Catholic Church, religious services being held in the chapel of said building daily; that the defendant is a collector of taxes, residing in the said borough; that a county tax of $11.37, a school tax of $26.00, a borough tax of $29.25, and a poor tax of $8.13, were levied by the proper authorities of the county and of the borough aforesaid, respectively, upon the property aforesaid, for the year 1877; that duplicates for the collection of said taxes have been placed in the hands of the defendant, who, as the plaintiff is informed and believes, threatens to collect the same out of the property aforesaid; that by the provisions of the Act of Assembly, approved the 14th day of May, 1874, said property is wholly exempted therefrom.

On the 18th day of March, 1878, the plaintiff was allowed to amend his bill. In this amendment, the bishop says, that the property in question is two certain lots of land, the building is situate upon one lot, and is known as St. Gabriel's Hall, is an institution of learning, and maintained by private charity; that the building situate upon the other one is an institution of learning, and is also a regular place of worship, religious services, according to the require-

ments of the Roman Catholic Church, being held in the chapel of said building daily.

The bishop's bill is supplemented by the affidavit of Mr. Cummisky, who says that he is the pastor of St. Gabriel's Roman Catholic Church of Hazleton, and that he is acquainted with the parties in this case, and with the property named in the plaintiff's bill; that one lot is situate on the northwesterly side of Wyoming avenue, being one hundred and fifty feet wide in front and rear, and one hundred and ninety feet deep; that the other lot is a piece of land situate on the easterly side of Wyoming street, being thirty feet wide in front and rear, and one hundred and ninety feet deep; that the said property is improved with a two-story frame dwelling, known as St. Gabriel's Hall; said building is an institution of learning, and has, up to the present time, been maintained, and is in charge of the Sisters of Mercy, who are employed in teaching and instructing the pupils under their care; that during the year 1877, the number of pupils in attendance was two hundred, and of the said number fifty-two paid their tuition, the remaining one hundred and forty-eight have been taught free of charge; the amount received from said fifty-two pupils was $220.50; the expenses of the institution for the year 1877 were far in excess of the said sum; the said sum of $220.50 was used in helping to defray necessary expenses for the year, and the balance of the expenses unprovided for was defrayed by contributions from the members of the parish, by amounts received from fairs and festivals held during the year, and by the sale of fancy articles made by the said Sisters of Mercy; that the said Sisters of Mercy do not receive any stated pay or salary for their services as teachers; that the admission of students to said institution is not restricted to children of any denomination, but its doors are open to all alike; that tuition is charged only to those whose parents are able to pay, and all others are admitted free of expense, so far as the capacity of the building and number of teachers will allow; that the said institution has no regular income, and that the money incidentally re-

ceived, as herein stated, is applied in helping to defray necessary expenses; that the sole and primary object of the institution is to afford instructions to the poor, and that it is not carried on for the purpose of private gain, and that the grounds surrounding said building, and described herein are necessary for the purpose of the institution; further, that said second described property is improved with a two story frame house, used by the Sisters of Mercy as a convent or religious house, as well as an institution of learning and place of religious worship; that during the year 1877, between ten and fifteen students received instructions in said building from day to day; that there is fitted up in said building a chapel or place of stated religious worship, in which mass is said every morning throughout the year; that the said chapel is not only used by the Sisters and pupils of said school, but also by the public; that the said properties are held by Bishop O'Hara in trust for the Roman Catholic Congregation of St. Gabriel, in Hazleton.

To this bill and affidavit the defendant filed the following affidavit by way of answer: Mr. Grenawalt says that the plaintiff's property, known as St. Gabriel's Hall, in Hazleton, * * * . is not an institution of public charity, but is held and enjoyed by the Catholic congregation, in which schools are held for pay; that public exhibitions and balls are held in said building, and that the same is open generally to the public, for which a stated price is charged; that the second building mentioned in the plaintiff's bill is a place of residence for persons known as "Nuns;" that lessons are given in said building for pay, and that the religious services held therein is for the benefit of the inmates, and not for the public; that the public are excluded from the same; that the taxes mentioned have been regularly assessed, and are due, and should be paid.

The affidavit of Justus Altmiller shows that the hall in question is used as a private school room, and for dancing; that he has paid in the said hall for a ball held therein in December of last year.

The affidavit of Charles F. Hill shows that he assessed this property, first, as a church building; second, a parsonage; third, St. Gabriel's Hall; and fourth, a dwelling house, occupied by the Sisters of Mercy.

The affidavit of Peter Brechoff shows that the property in question was assessed in the name of William O'Hara, Bishop of Scranton.

The affidavit of Henry Eisdam shows that balls were generally held in the hall in question.

Sylvester Engle shows in his affidavit that he has paid tuition for two children of his that attended school in this hall.

Upon the argument of this motion, counsel for the plaintiff contends that all this property is exempt from taxation, whilst counsel for the defendant contends that the parsonage, the convent of St. Gabriel's Hall are not exempt under Art. IX., § 1, of the Constitution of 1874. The article and section in question provides that the legislature may exempt from taxation "institutions of purely public charity," and "actual places of religious worship." To carry out and enforce this portion of the Constitution, the law making power provided by the Act of the 14th of May, 1874, P. L. 158, "that all churches, meeting houses, or other regular places of stated worship, with the grounds thereto annexed necessary for the occupancy and enjoyment of the same;        *        *        *        all universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed, and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity,        *        *        *        are exempt, *        *        *        *Provided*, that all property, real and personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived, shall be subject to taxation. This presents a very important question for our consideration. So far as we have been able to ascertain, this is the first time the question in its present shape is presented, con-

cerning the taxation of property held in trust by the Bishop of the Roman Church. It is well known that the Roman Church, for reasons best known to the people of that denomination, has its own schools and its convents for the Sisters of Charity, and that these several institutions all act together in one harmonious body for the cultivation of the word of God and the preservation of the human soul. To an outsider the question may be asked, cannot the schools and the convents be dispensed with? The answer is plain. No; if the conscience of the believer says so. All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. This is the fundamental law of the land. It is more; it is the touch-stone of the liberty of the citizens of this Commonwealth. That being the case, the question is, whether the mode provided for worshiping Almighty God shall be of a uniform standard and costs, like the ration fed to the army, or shall it be as the laws of the church require. If our Roman friends put on only a little more style while passing the sinner over the road to heaven than our Quaker friends do, whose business is it, so long as the Constitution allows them to worship Almighty God according to the dictates of their consciences? The wording of the statute exempting from taxation property is very liberal, and ought to be so construed. The words, "with the grounds thereto annexed necessary for the occupancy and enjoyment of the same," repeated as they are in the statute, show that the intention was not to limit any one of the several institutions to a certain number of feet or acres of ground, but to sufficient ground annexed for the enjoyment of the same. Who is to be judge of the exact amount of land to be annexed? Shall it be only ten square feet or ten hundred square feet, or ten acres? We are clearly of the opinion from the map of the land used upon the argument of this motion, and the affidavits of the parties stating the extent of ground annexed, that it does not exceed the amount intended by the words of the statute of 1874.

This leaves us but one other question to examine, namely: Are the several properties named in the bill exempt under the law? In the case of Donough's Appeal, 5 W. N. 196, 5 Norris, 306, it was held, where the books of the Library Company of Philadelphia have at all times since its organization in 1731, been freely open to the public for gratuitous use within the building, that such institution was a charity under Article IX., § 1, of the Constitution. The evidence in this case showed that this institution was, maintained by annual contributions of its members, by the income from bequests of property, and by fees paid for the use of books by persons not members; that after deducting necessary expenses of maintenance, all profits and income were applied to the purchase of books; that the institution was managed by twelve directors; that the use of the books was given, (1) without charge to all persons using them within the building, (2) to all members with limitations on the number of volumes, (3) to all persons for a small charge who desire to use the books. The Supreme Court while disposing of this case, says that "the exception claimed in this case falls clearly within that clause of the Act of May 14, 1874, which exempts from taxation all "associations and institutions of learning, benevolence, or charity, with the ground thereto annexed, and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public charity." "One point," adds the court, "we should notice. The word 'purely' must be interpreted so as to confine its qualifications of a 'public charity' to those institutions solely controlled and administered by the State herself, or so as to extend it to private institutions for purposes of purely public charity, and not administered for private gain. We prefer the latter interpretation as declaring the true meaning of the Constitution, and subserving best the public interest." In the case of Craig et al vs. The Trustees of the First Presbyterian Church, 9 Pitts. Leg. Jour. 90, it was held that the Sunday school rooms and the lecture rooms of a modern church are as essentially used for religious purposes as the body of the

church building; that the services in such schools are in the main of a religious character is too well known to be seriously disputed. So of the lecture room. Nor do we think it detracts from the character of the occupancy of the building that it is proposed to use the lecture room occasionally for social gatherings incident to the Church, for society, for benevolent objects, and for fairs held by the ladies to raise funds. If the church requires the building for its Sabbath school, and for a lecture room and such purposes, and religious in their nature, of what possible matter can it be should the church utilize said building by applying it to other collateral objects not in themselves technically religious, yet germain to the general purposes? And if by such means an income is derived therefrom, there is no violation of either law or morals.

These views, are, no doubt, based upon the principle announced in cases growing out of the attempt to levy and collect taxes on railroad property. It has been held that the depots, round houses, water stations, and other necessary parts of a railroad are exempt from taxation. To operate a railroad it must have these several necessary parts. How much stronger, therefore, is the reason for the several religious denominations and their churches to have all necessary parts exempt from taxation? The one simply transports the body, or destroys it. The other preserves the soul, and guides it on its journey to everlasting happiness. So long as the modern Christian will not pay the ordinary expenses of the house of God, and the good and the pure must resort to fairs and balls to raise the wherewithal to spread the gospel, then we say let these several denominations have the place to hold such fairs and balls free of taxation. In view of the doctrine thus laid down for the government of modern churches, why should the schools, lecture rooms, and convents, all germain to this church, if not in fact a part of it, be liable to taxation?

It has been held that the true legal notion of a church is a consecrated place, having attached to it the rights of burial, and the administration of the sacrament: 2 Inst.

363.   It is not, in strictness, the material fabric only,   but the cure of souls:   Burns' Eccl. Law, 332.   The fabric of the church consists of the nave,   or   body   of   the   church, with its aisles, the church and steeple.   In American law, and its broadest sense, the Church   means   the   whole collective body of Christians.   In a more limited sense, it is a body of Christians adopting one creed,and organized under some ecclesiastical government.   In a narrower, but equally appropriate sense, it means a body of Christians,or religious sect, professing one faith, organized for the free exercise of their own views of religious doctrine, under the guarantee of the Constitution of the United States and the   Constitution of the several States, including as well,   according   to the common understanding, the place where the persons composing such organization regularly assemble for worship:   2 Potter's Corp. 721.   The "place" and its "use" are fully commented upon in the case of Mullin vs.   the   Commissioners of Erie County, 3 Norris, 291.   The Supreme Court of our State, while construing Art. IX., § 1, of   the Constitution, and Act of 1874, held, in that case, that "the legislative power is confined to the very use of   the   building, thus taking away all excuse for loose interpretation as to the character of the building.   It must be a place of religious worship.   What more definite to describe the use made of the place—a place, be it church, chapel,   meetinghouse, or cathedral."   "It is clear," adds the court, "from both the Constitution and the law, the use,not the building, defines exemption."

Convents are places of religious worship, and fall clearly within the rule of "use" as here laid down, and there   can be no doubt but that St. Gabriel's Hall is within the   doctrine sustained in the case of Donough's Appeal.   We are not so clear on the exemption claimed for the   parsonage, but as the evidence shows that it is   erected   on   the   land annexed and necessary for the enjoyment of the church,   it may be considered part of the church property.

Under our present view of the law and the facts in   this case, we cannot do otherwise than hold that   the   property

named in the plaintiff's bill of complaint is not liable to taxation, and therefore order and direct the injunction heretofore granted continued until the further order of this court.

## LEGAL PRACTICE IN LONDON.

In the legal profession in England there are three distinct and well defined branches of practice; and the boundary lines of the several spheres of enterprise may not be overstepped. The solicitor transacts ordinary business, and advises his client, both as to the avoidance and the redress of grievances. He asserts the rights of the layman who intrusts his interests to his keeping, and avenges the wrongs inflicted upon him by others, so far as these functions can be performed with the aid of the ordinary appliances which the law affords. When matters become more complicated than the simple remedies will suffice to cure, the solicitor seeks the aid of counsel. The client cannot go directly to the latter to the prejudice of the general practitioner at law; nor can counsel transact ordinary business for laymen, however willing they may be to pay his fees or secure his services. An opinion may of course be obtained on the most trivial subject, but the case must be submitted through a solicitor, or counsel cannot entertain it, so that the wider professional interests are duly protected. There is a still more exclusive class of practitioners, who act solely as consultees and leaders—the Queen's counsel—who are prohibited from appearing in most cases before the courts without a junior. By this simple but effective organization of labor, any unseemly conflict of aims and interest is prevented, and the public benefit, not less than the profession, by the arrangement made and carried out.

WE have received A Manual of International Law, by E. M. Gallaudet, in 321 pages in 12 mo and neatly bound in muslin. It is an able and comprehensive work and should be found in the library of every one who desires to possess any knowledge of this most important subject. Published by A. S. Barnes & Co., New York. Price $1.50, by mail post paid.